# IN THE COURT OF APPEALS OF IOWA

No. 23-0756
Filed July 26, 2023

**IN THE INTEREST OF J.H., J.S., and J.S.,**
**Minor Children,**

**J.S., Mother,**
 Appellant,

**S.H., Father,**
 Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Joan M. Black,
District Associate Judge.

A mother and father separately appeal the termination of their respective
parental rights. **AFFIRMED ON BOTH APPEALS.**

Matthew Shimanovsky, Iowa City, for appellant mother.

Kristin L. Denniger, Mount Vernon, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, for appellee State.

Sara E. Linder of Linn County Advocate, Inc., Cedar Rapids, attorney and
guardian ad litem for minor children.

Considered by Ahlers, P.J., and Badding and Buller, JJ.

**AHLERS, Presiding Judge.**

This case involves three children—one born in 2020 and twins born in 2022. The juvenile court terminated the parental rights of all parents—the mother of the three children, the father of the oldest child, and the father of the twins. The mother and the oldest child's father separately appeal. The father of the twins did not appeal, so all references in this opinion to the father refer to the father of the oldest child.

Both parents challenge the statutory grounds for termination, challenge whether termination is in the children's best interests, and argue a permissive exception should be applied to preclude termination. The mother also seeks additional time to work toward reunification.

We conduct de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). Our review follows a three-step process that involves determining if a statutory ground for termination has been established, whether termination is in the children's best interests, and whether any permissive exceptions should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). Then we address any additional claims raised by a parent. *In re S.D.*, No. 22-1141, 2022 WL 3906757, at *1 (Iowa Ct. App. Aug. 31, 2022).

We begin by addressing the father's claims. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(b), (e), and (h) (2023). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We elect to address paragraph (b), which authorizes termination when "[t]he court finds that there is

clear and convincing evidence that the child has been abandoned or deserted." Iowa Code § 232.116(1)(b). A finding of abandonment requires proof the parent's intent to abandon and corresponding conduct relinquishing or surrendering "parental rights, duties, or privileges inherent in the parent-child relationship." *Id.* § 232.2(1). "'Desertion' means the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." *Id.* § 232.2(15). "Proof of desertion need not include the intention to desert, but is evidenced by the lack of attempted contact with the child or by only incidental contact with the child." *Id.*

Here, the State established that the father deserted his child. The father lives in Indiana. The mother testified that the father has never been a part of the child's life and only saw the child one time for ten minutes. A social worker made contact with the father by mail and talked with him by phone about how to file for an attorney in the underlying child-in-need-of-assistance proceeding, but the father did not communicate any further with the worker. The maternal grandmother with whom the child was placed also never had any contact with him. The father also failed to appear at the termination hearing.[1] He never involved himself in the child's life, never developed a parent-child relationship, and never took on the rights, duties, or privileges associated with serving as a parent to his child. We conclude the juvenile court correctly determined the father deserted the child through his inaction over her lifetime, so a statutory ground for termination was established.

---

[1] Counsel for the father made a verbal motion for the father to appear at the termination hearing telephonically after making contact with him over the lunch break. The court denied the motion.

The father also contends termination is not in the child's best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). Little is known about the father because he never involved himself in these proceedings or with the child. Given the resulting uncertainty, we cannot say with any certainty if the child could benefit from a relationship with him. However, we can say with certainty that the child needs and deserves permanency, which the father cannot provide given his lack of involvement. Termination would facilitate permanency and is in the child's best interests.

Within the father's best-interests argument, he references an exception to termination that allows the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See* Iowa Code § 232.116(3)(c). The burden of establishing an exception rests with the parent seeking its application. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The father's argument is not preserved for our review because he never urged the juvenile court to apply such exception. *See In re R.P.*, No. 23-0419, 2023 WL 3612412, at *2 (Iowa Ct. App. May 24, 2023). Even if he had, the record is devoid of any evidence of a bond between the father and child, so his challenge fails on the merits.

Having denied each of his challenges, we affirm the termination of the father's parental rights to the oldest child. We turn our attention to the mother.

The juvenile court terminated the mother's parental rights under section 232.116(1)(h), which authorizes termination when

> (1)  The child is three years of age or younger.
> (2)  The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3)  The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4)  There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother only challenges the fourth element—whether the children could be safely returned to her custody at the time of the termination hearing.  *See* Iowa Code § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."); *In re A.M.,* 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

This family came to the attention of the Iowa Department of Health and Human Services when the maternal grandparents[2] took the twins to the emergency room with concerns about their low weight.  The children stayed with the grandparents for ten days.  During that time, a pediatrician advised the grandparents that the twins' malnutrition could have been fatal within one to two weeks absent their intervention.  The mother then picked the children up from the grandparents in the middle of the night.  Two weeks later the mother was arrested

---

[2] The maternal grandparents adopted the mother when she was in her teens.  All future references will be to the grandparents.

following a domestic-violence incident, and the children returned to the grandparents' care. The twins gained weight and began to progress developmentally in the grandparents' care. Despite the clear evidence that the twins' health and development improved once removed from her care, by the time of the termination hearing, the mother still failed to fully appreciate that her inability to adequately care for the twins significantly impacted their health and well-being. She only conceded she "did something wrong," but she did not identify what that "something" was. The mother's lack of awareness of her role in the malnourishment of the children contributes to our concerns about the mother's ability to provide safe and adequate care for the children. *See In re D.D.*, 955 N.W.2d 186, 193 (Iowa 2021) ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").

Also concerning is that two of the children tested positive for ingestion of marijuana when removed from the mother's custody. Despite the mother's insistence that she no longer uses the drug, she has never complied with drug testing to support her assertion. When she did submit to a sweat-patch test, she sabotaged the testing by removing the patch (a violation of the protocol for testing) and losing it so it could not be tested. So, we are left to speculate about her sobriety, which we are unwilling to do especially in light of the children's positive tests and inability to self-protect.

The mother also generally lacks stability. During the ten-month period between the start of juvenile court involvement and the termination hearing, the mother has moved several times between multiple cities and changed jobs multiple times. While she now professes to have found stability through her job and newly-

acquired apartment, we are not persuaded that having a new job and an apartment for a few weeks constitutes the stability she claims. The mother is on precarious footing in maintaining her recently acquired housing even with her employment, which contributes to our concerns.

Taking these concerns together, we conclude the children could not be safely returned to the mother's custody at the time of the termination hearing. As a result, the State established a statutory ground for termination.

Next, we consider whether termination is in the children's best interests. As we did with respect to the father's rights when making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). We conclude termination is in the children's best interests. The mother has demonstrated she cannot provide the children with the stability and nurturing they deserve and require. Termination is in the children's best interests because it will permit the children to find a home that can provide stability and long-term nurturing that the mother has not been able to provide.

The mother seeks to preclude termination by application of a permissive exception to termination. *See* Iowa Code § 232.116(3). It is the mother's burden to establish an exception to termination should be applied. *See A.S.*, 906 N.W.2d at 475–76. First, she seeks application of section 232.116(3)(a), which permits the court to forgo termination when "[a] relative has legal custody of the child[ren]." This challenge fails because, while the children are placed with the grandparents,

custody of the children remains with the Iowa Department of Health and Human Services. As a relative does not have custody of the children, section 232.116(3)(a) does not apply. *See In re B.W.*, No. 19-0602, 2019 WL 2375255, at *4 (Iowa Ct. App. June 5, 2019) (holding section 232.116(3)(a) only applies when a relative has legal custody of a child). Second, the mother attempts to invoke paragraph (c), which permits the court to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship[s]." Iowa Code § 232.116(3)(c). While we understand there are bonds between the mother and children, the mere "existence of a bond is not enough." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The bond must be so significant that severing it would be manifestly detrimental to the children. *Id.* The record does not establish bonds of this magnitude between the mother and any of the children. Therefore, we decline to apply section 232.116(3)(c).

Finally, we address the mother's request for additional time to work toward reunification. If the juvenile court decides not to terminate parental rights, it has the option of ordering any alternative statutory permanency option, which includes giving the parent an additional six months to work toward reunification. Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving the parents an additional six months). However, before the court may grant the parent additional time to work toward reunification, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the

determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

The mother argues additional time would give her an opportunity to demonstrate an ability to maintain employment and housing sufficient that the children could return to her care. Certainly, if the mother had more time to demonstrate employment and housing stability it would increase the likelihood the children could return to her custody. However, she does not explain how she would comply with drug testing moving forward. Nor does she explain how she would gain insight into how to provide the children with the necessary care and support required for them to thrive developmentally. So, we conclude additional time to work toward reunification is not warranted in this instance.

**AFFIRMED ON BOTH APPEALS.**